Dear Chief Cazes:
You have requested the opinion of this office on four questions. For the sake of clarity, each of your questions will be addressed separately below. The City of Plaquemine is governed by a special legislative charter, Act 109 of 1878, as amended. We contacted the Town Clerk and were provided with a copy of the charter, as amended, that is on file with that office. Consequently, our responses to your questions will be based upon the charter, as amended, on file with the Town Clerk, and upon applicable state law.
Section 1(a) of the Charter of the City of Plaquemine provides that "[t]he governing authority of the City of Plaquemine shall consist of a mayor, six (6) selectmen and achief of police." (Italics added) The Charter formerly provided for a marshal, instead of a chief of police. It is noteworthy that while the position of marshal was originally appointed by the mayor and the selectmen, the chief of police is elected at large and his position is elevated to constitute a part of the governing authority of the city. It is apparent that the position of marshal was intended to be expanded when the newer position of chief of police was created, because it obviously encompassed the former position of marshal. For example, Section 2(a) of the Charter states "[t]he mayor and the chief of police (marshal) shall be elected at large by qualified voters throughout the City of Plaquemine." The parenthetical reference to the position of marshal clearly indicates that the former position of marshal is incorporated in the position of chief of police. The only description of the duties of the chief of police in the Charter is found at Section 9, and that description is only of the duties of the marshal:
 The Marshal (or Assistant Marshal) shall attend upon the Mayor's Court, and be subject to his orders and the regulations aforesaid, and is hereby vested with all the powers of a peace officer and fully authorized and empowered to serve and execute all warrants, writs, summons, orders, search warrants, mittimus or commitments issued by the Mayor or any Justice of the Peace within said Town [City]; to make arrests for the infractions of the Laws of the State and the laws, ordinances and regulations of said Town [City]; to follow and arrest all offenders flying from said Town [City], all in the same manner and to the same extent as Sheriffs in the discharge of their duties, and shall be entitled to the same compensation as provided by law for Sheriffs in criminal cases.
The foregoing section of the Charter has remained unchanged, with the sole exception of the insertions of the bracketed word "City," since the original act of incorporation of the town of Plaquemine (Act 109 of 1878).
In Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311
(1968), the Supreme Court recognized that a chief of police of a Lawrason Act municipality is the chief law enforcement officer of the municipality and, as such, has the inherent power of supervision over the police department. See also, Cogswell v.Town of Logansport, 321 So.2d 774 (La.App. 2d Cir. 1975). This office has expressed its opinion, with regard to municipalities governed by special legislative charters, including the City of Plaquemine, that chiefs of police have certain inherent powers, including supervision of the police department. Attorney General Opinion Numbers 85-122, 86-145 and 87-341. We think the title "chief of police" is synonymous with "supervisor of police" and, barring some specific restriction in the city charter, confers upon the chief of police the power to supervise the day to day operations of the police department. Further support for this conclusion is found in the specific exclusion of supervision and administration of the police department by the mayor set forth in Section 2-64 of the municipal code. That section provides that the mayor shall supervise and direct the administration and operation of all municipal departments, offices and agencies,except the police department and the city court. However, it should be noted that the mayor and aldermen have the statutory authority to amend the municipal budget and reduce the funds allocated to the police department, if necessary. See, La. A.G. Opinion Number 94-313.
Having generally discussed the powers and duties of the chief of police under the city charter, we now address your specific questions.
Question 1: "Once the budget for the police departmentis approved in a dollar amount, is the Mayor allowed to hold backfunds that have been approved by the City Council, and direct howthose funds are to be spent?"
As mentioned above, by ordinance, the supervision, administration and operation of the police department is specifically excluded from the mayor's responsibilities. On the other hand, we are of the opinion that you, as chief of police, have the inherent power to supervise and direct the administration and operation of the police department. Consequently, this office is of the opinion that the mayor cannot, without amending the municipal budget, withhold funds appropriated to the police department by the board of selectmen, nor can he direct that those funds be expended other than as specified in the budget.
Question 2: "Police Department administrative staff anddetectives are considered on call 24 hours each day and have beenissued unmarked units. May these units be used for any reasonbased on the fact that any staff member may be called to work atany time in an emergency?"
This office has issued a number of opinions recognizing the inherent authority of the chief of police to control city police vehicles and to assign a vehicle to himself for around the clock use in conjunction with his 24-hour duty hours. We are of the opinion that this authority of the chief of police extends likewise to assigning vehicles to other police personnel for use in conjunction with their 24-hour on-call status. It is pertinent to note that modern communications devices such as beepers and cell phones provide alternatives to police radios for notifying officers of emergencies.
However, the inherent authority of the chief of police extends only to functions of the police department, i.e., the law enforcement function. Otherwise, with the exception of the mayor's delegated authority as set forth in Section 2-64 of the municipal code, the control of all municipal property rests with the board of selectmen. As we have noted in previous opinions, personal use of city police vehicles must be approved by the board of selectmen. See Attorney General Opinions Number 78-1461, 80-1078, 82-1106 and 96-475, copies of which are enclosed for your convenience. However, in establishing permissible personal use of police vehicles, consideration must be given to ArticleVII, Section 14 of the Louisiana Constitution, which prohibits the donation or loan of the "property or things of value of the state or of any political subdivision" to any person, association or corporation. It must also be noted that personal use of employer-owned vehicles has income tax consequences which are beyond the purview of this opinion.
Question 3: "The police department and the chief arerepresented by the city attorney. Payment for his services istaken directly out of the police budget by the city. Am I allowedby law to hire another attorney of my choice to represent thePolice Department?"
R.S. 33:1811 limits a municipality to having "no more than one municipal attorney and no more than three assistant municipal attorneys." I find no authority for the Police Department to have its own separate counsel, unless the Board of Selectmen would designate an assistant city attorney as the attorney for the police department only. In any event, the municipal budget adopted for the police department would have to provide funds specifically for legal counsel for the department.
Question 4: "When members of the Police Departmentretire or resign, does the Mayor have the authority to terminatethe positions and prevent me from refilling those positions?"
As mentioned above, Section 2-64 of the municipal code specifically excludes supervision and direction of the administration and operation of the police department from the mayor's responsibilities. Therefore, the mayor does not individually have the authority to terminate positions within the department or to preclude you from filling vacancies. But, please note that we have previously rendered two opinions in which we concluded that the Board of Selectmen of the City of Plaquemine has the authority to appoint city officers and hire city employees, including police personnel. Copies of those opinions, Attorney General Opinions Number 93-53 and 96-238, are enclosed.
You informed the author of this opinion that one of your concerns is that certain federal funds or grants have been provided to the city or to your department to increase the size of your police force. The city attorney should be consulted for assistance in determining whether the elimination of positions in the police department would violate terms of grant agreements or require that the city reimburse the federal government for funds already received.
We trust this opinion adequately responds to your inquiries. Should you have further questions, please do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: GLENN R. DUCOTE
ASSISTANT ATTORNEY GENERAL
RPI/GRD/dra Enclosures
OPINION NUMBER 78-1461
November 16, 1978
 71 . . MUNICIPALITIES 60 . . LAW OFFICERS 77 . . OFFICERS — LAW MUNICIPAL R.S. 33:441
 The Mayor has the discretion to nol pros violations presented to the Mayor's court.
Hon. Jerry H. Rogers The town council has control over Alderman the municipality's property so as Town of Abita Springs to the manner the Chief of Police Abita Springs, LA 70420 may use the police car.
Dear Mr. Rogers:
This office is in receipt of your recent letter requesting an opinion. Your questions are as follows:
 1. (a) What reasons must the Mayor have to enter a nolle prosequi of traffic violations which are in the Mayor's court;
 (b) At what time and manner may a nolle prosequi be entered; and
 (c) Can the Mayor nolle prosequi traffic violations without the consent of his council?
 and
 2. Is it permissible for the Board of Aldermen to pass a resolution authorizing the Police Chief to use a police car for personal use as well for patrol with the stipulation he be responsible for maintenance?
In answer to your first question the pertinent law is set forth in R.S. 33:441 and 33:442. Based upon these provisions this office has previously concluded that the Mayor has the right to enter a nolle prosequi of violations before his court once the violation enters the court process. Attorney General Opinion No. 77-1697. It is well settled the matter of entering a nolle *Page 2 
prosequi is purely discretionary and this is reflected by the provision stating, "The mayor may try all breaches of ordinances. . . ." R.S. 33:441. Inasmuch as the authority over the proceedings is vested in the Mayor there would be no need for him to secure the consent of the council to enter a nolle prosequi on a matter in his court.
With regard to your second question, pursuant to R.S.33:401 the town council has control over the property of the municipality and could establish the use of the police car in the manner sought herein. This is particularly true in view of the fact that the police chief is on 24 hours duty.
It is hoped this sufficiently answers your questions, but if further information is desired, please do not hesitate to contact us.
Sincerely yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: BARBARA B. RUTLEDGE
Assistant Attorney General
BBR:mb
OPINION NO. 80-1078
February 11, 1981
 L.R.S. 33:321, et seq; 13:1881; 42:61-2; 42:63(E); 42:64; 33:401-33:423, sup.: AG Op. #'s 80-1280 80:1281
 1. In a city incorporated under the Lawrason Act, R.S. 33:32], et seq, city police officers may be deputized as marshals to act on intermittant basis, if not compensated for services as deputy marshal and will not violate prohibitions against dual office holding.
 2. Chief of police of city has authority to discipline and suspend an officer without pay, but mayor and board of alderman retain firing authority.
3. Chief of police has inherent authority to control city police Mr. Cranford L. Jordan, Jr. vehicles, and accordingly, has Chief of Police authority to assign a police Winnfield Police Department department vehicle to himself but 203 South Jones Street not for personal use unless so Winnfield, LA 71483 authorized by mayor and board of aldermen.
Dear Mr. Jordan:
You have requested an opinion of the Attorney General, relative to your office as chief of police of the City of Winnfield. This request concerns three different and distinct problems; therefore, this answer shall be broken down into three marts.
 1.
Can the Ward I City Marshal deputize the city police officers of the City of Winnfield so that they can make arrests within Ward I of Winn Parish immediately bordering the city limits, if the officers receive absolutely no compensation for being deputy marshals?
R.S. 13:1881 caves the marshal authority, with approval of the judge, to appoint one or more deputy marshals having the same power and authority as the marshal:
 * * * "B. The marshal may, with the approval of the judge, appoint one or more deputy marshals having the same powers and authority as the marshal but the marshal shall be responsible for their actions." *Page 2 
Though the marshal can appoint deputies, since these deputies will be police officers for the City of Winnfield, the question is whether deputization will constitute dual office holding, violative of 42:61, et seq. In a previous opinion of this office (Attorney General Opinion No. 76-1550), we opined that a police chief could not also serve as deputy marshal, as such employment would be violative of R.S. 42:31, which is the prohibition against dual office holding; however, in that opinion, it was not anticipated that the officer would serve as deputy marshal without pay. We suggest that that opinion may have been different, had they served without pay.
R.S. 42:31 provides:
 * * *
 "Persons holding or exercising any office, position, or employment of profit, in one of the three departments of government of the state of Louisiana, shall not hold or exercise another office, position, or employment of profit,
in that department or in any other state department, or in any parish, municipality, board, commission, or subdivision of the state." (Emphasis added).
Since the issuance of that opinion, R.S. 42:31 has been repealed and R.S. 42:61, et seq, has been enacted to fix the rules for prohibition of dual office holding.
 R.S. 42:61 declares the policy of the Act: *Page 3 
 "A. It is essential to the maintenance of a democratic society that public officials and employees perform the public business in a manner which serves to promote and maintain in the general citizenry a high level of confidence and trust in public officials, public employees, and governmental decisions. The attainment of this end is impaired when a public official or employee holds two or more public offices or public jobs which by their particular nature conflict with the duties and interests of each other. The attainment of a high level of confidence and trust by the general citizenry in public officials, employees, and governmental decisions is further impaired by the excessive accumulation of governmental power which may result from public officials or employees holding two or more public offices or public jobs.
 B. It is the purpose of this Part to implement a policy which will serve to maintain a high level of trust and confidence by the general citizenry in public officials, employees, and governmental decisions of the government of this state and of its political subdivisions by defining and regulating dual employment and by defining, regulating, and prohibiting dual officeholding."
R.S. 42:62 provides:
 "As used in this Part the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise: *Page 4 
 * * *
 (3)"Employment" means any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof." (Emphasis added)
R.S. 42:63 enumerates the prohibitions against dual office holding. A reading of this section discloses that R.S. 42:63 (E) most nearly approximates the immediate situation:
 "E. No person holding a full-time appointive office or full-time employment in the government of this state or of a political subdivision thereof shall at the same time hold another full-time appointive office of full-time employment in the government of the state of Louisiana, in the government of a political subdivision thereof, or in a combination of these."
R.S. 42:64 deals with incompatible offices. Paragraph B of that section provides:
 "B. No other combination of offices or employments shall be deemed to be incompatible unless the powers, functions, or duties are found to be adverse to the public interest as set forth in Section 61 of this part."
It is our opinion that, since the officers will not be compensated for their services as deputy marshals, and since their employment will be only for a short period of time, on an emergency basis, that such employment is in keeping with the policy of the Act, as stated in R.S. 42:61 and does not violate any specific prohibition contained in the Act. *Page 5 
 2.
Can the mayor and council (board of aldermen), by ordinance, give the chief of police the authority to suspend an officer without pay, and retain the firing authority?
The City of Winnfield is incorporated and governed under the provisions of the Lawrason Act, L.R.S. 33:321, et seq.
LSA-R.S. 33:401 provides, in pertinent part, as follows:
 "A. The mayor and board of aldermen of every municipality shall have the care, management, and control of the municipality and its property and finances. They shall have power:
 "(6) To make all police regulations necessary for the preservation of good order and the peace of the municipality; and to prevent injury to, destruction of, or interference with public or private property.
 "(30) To provide for municipal officers other than those required by this Part who may be found necessary; to prescribe the duties and fix the compensation of all officers and employees, subject to any applicable civil service law; and to require bonds with sureties for the performance of duties from all officers and employees.
 "(31) To provide for the removal of officers and discharge of employees for misconduct or neglect of duty, subject to any applicable civil service law."
LSA-R.S. 33:402 provides, in part, that:
 "The following additional powers are conferred on the mayor and aldermen of cities and towns and villages: *Page 6 
 "(4) To establish, regulate, and support night watch and police and define the duties thereof, subject to any applicable civil service law. However, in those municipalities governed by the provisions of R.S. 33:321
through R.S. 33:481, which have a chief of police elected by a majority of the qualified voters thereof, appointments of police personnel shall be made only upon the recommendation of the chief of police. Such nominations or recommendations are to be made irregardless of race, color, or creed."
LSA-R.S. 33:423 provides as follows:
 "The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made irregardless of race, color, or creed."
In Attorney General Opinion Number 80-1281, it was concluded that:
 "Under the quoted statutes, the mayor and board of aldermen are generally empowered to hire and fire municipal employees (which includes city policemen), make all police *Page 7 
regulations necessary for the preservation of good order and the peace of the municipality, prescribe duties and fix the compensation of the officers and employees of the municipality and to establish, regulate and support night watchmen and policemen and to define their duties. The Chief of Police is given the general responsibility for law enforcement.
 ". . . Thus, considering the applicable statutes and jurisprudence referred to above, it is our opinion that an alderman cannot change the working schedules of the city policemen. Such an action would infringe upon the chief of police's inherent power to supervise the operation of his department. This inherent power would also include the power to discipline the city policemen. But it should be remembered that the mayor and the board of aldermen do have the authority to fire municipal employees, including city policemen, for neglect and violation of duty."
In Gros v. Town of Patterson, La.App., 345 So.2d 134, (1st Cir. 1977), the Court held:
 ". . . Under R.S. 33:423 the marshal is the chief law enforcement officer of the Town and as such has supervision of the police department with the authority to control property and assign personnel. Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968). We are of the opinion that the authority to control property and assign personnel includes the power to suspend. Chief Paul, as the chief law enforcement officer of the Town of Patterson, had the authority to suspend the appellant." *Page 8 
In Gros, the court distinguished the case at bar fromGraham v. Marshall, La.App., 333 So.2d 707 (2nd Cir. 1976), because Graham was concerned with "hiring and firing" and Gros was concerned with "suspension".
It is our opinion that the chief of police has the power to suspend officers, and the mayor and board of aldermen still retain the right to hire and fire.
 3.
Can the police chief, who is appointed, have the authority to take a police car home when on call, or can he assign a vehicle for his use?
R.S. 33:423, supra, sets out the powers and duties of the chief of police, as set out above. In Attorney General Opinion Number 80-1280, this office made the following comment with regard to the use of police department vehicles by the chief of police:
 "There were several inquiries, concerning the chief's duties and his authority over the police department's car. The chief of police is given the general responsibility for law enforcement in the municipality. His authority to enforce all ordinances and laws also includes the grant of certain inherent powers which are necessary for him to effectively carry out his duties.
 In the case of Cogswell v. Town of Logansport, app. 1974, 321 So.2d 774, it was said that the general responsibility for law enforcement granted to a chief of police means the power to supervise the operation of the police department and assign its personnel and equipment, subject to the statutory authority exercisable by the mayor and board of aldermen. Therefore, the chief of police has the general responsibility for law enforcement in the municipality, supervisory powers over police property and personnel, and other powers which may be delegated by the local governing authority. The Court in Lintini v. City of Kinner, La. 1968, 211 So.2d 311, stated that the chief of police is granted certain inherent powers which gives him the authority to control city police property and assign personnel. *Page 9 
 Thus, it is our opinion that the chief of police has the inherent authority to control city police vehicles. He has the authority to assign a police department vehicle to himself for police work and such police vehicle may not be used as a personal car by the chief of police unless this personal use has been authorized by the mayor and board of aldermen."
The above conclusion is applicable to your situation.
We hope the above is responsive to and satisfies your request. If any additional information is required, please contact our office.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: William M. Cady
Assistant Attorney General
WJG, JR:WMC:bb
OPINION NUMBER 82-1106
February 4, 1983
Honorable Mildred Bell Alderman P.O. Box 215 Robeline, Louisiana 71469 71 Municipalities 77 Officers Honorable Odell Jenkins LSA-R.S. 33:401; 33:423; 33:404
Alderman P.O. Box 313 Duties and powers of officers Robeline, Louisiana 71469 of a Lawrason Act municipality.
Aldermen:
You requested an opinion from this office concerning municipal officers and their control over municipal property. The Village of Robeline is a Lawrason Act municipality and is therefore governed by the applicable statutes.
Several of your inquiries dealt with the chief's authority over the village car and related matters. LSA-R.S. 33:401 gives the mayor and board of aldermen the power to control all municipal property. It provides, in pertinent part, as follows:
 A. The mayor and board of aldermen of every municipality shall have the care, management, and control of the municipality and its property and finances.
LSA-R.S. 33:423 provides:
 The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. *Page 2 
He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made irregardless of race, color, or creed.
The chief of police is given the general responsibility for law enforcement in the municipality. His authority to enforce all ordinances and laws also includes the granting of certain inherent powers which are necessary for him to effectively carry out his duties.
In the case of Cogswell v. Town of Logansport,321 So.2d 774 (La.App. 2nd Cir. 1974), it was said that the general responsibility for law enforcement granted to a chief of police means the power to supervise the operation of the police department and assign its personnel and equipment, subject to the statutory authority exercisable by the mayor and board of aldermen. Therefore, the chief of police has the general responsibility for law enforcement in the municipality, supervisory powers over police property and personnel, and other powers which may be delegated by the local governing authority. The court in Lentini v. City of Kenner, 211 So.2d 311 (La. 1968), said that the chief of police is granted certain inherent powers which gives him the authority to control city police property.
Thus, it is our opinion that the chief of police has inherent authority to control city police vehicles. He has the authority to assign a police department vehicle to himself for police work but such police vehicle may not be used as a personal car by the chief of police unless this personal use has been authorized by the mayor and board of aldermen. However, because of their power to control and manage municipal property, it is also our opinion that the mayor and board of aldermen may specifically request that the village car be used by the chief of police only when he is working or conducting business relative to the municipal police department. In the same vein, in that *Page 3 
the mayor and board of aldermen are also vested with the care, management and control of the municipality's finances, it appears that they may legally designate where fuel for municipal owned vehicles may be purchased.
You also asked if the governing authority can require the chief of police to log data relative to the use of the municipal vehicle, if they may question the fuel bill and if they may request itemized receipts for bills incurred for municipal purposes. LSA-R.S. 33:404 provides, in part, that:
 The mayor shall preside at all meetings of the board of aldermen, and in case there is an equal division, he shall give the deciding vote . . . He may require any officer of the municipality to exhibit his accounts or other papers, and to make report to the board of aldermen, in writing, on any matter pertaining to his office . . .
Applying this statute, it is the opinion of this office that the mayor may require a municipal officer to make written reports to the board of aldermen on any matter pertaining to his office. Such reports would include reporting on the use of a police vehicle and bills incurred by the police department.
In another one of your questions, you asked if the chief of police can legally charge a "ten dollar arrest fee" for each arrest made by his office. In researching this area of the law and those relative to allowable fees for law enforcement officials, I could find no statutes which give a municipal chief of police the authority to impose an "arresting fee" for arrests made by his office.
Your final inquiries concerned the personal use of municipal property and benefits by elected officials. These matters are ethical questions which may be submitted to the Board of Ethics. I suggest that you contact the Board of Ethics for Elected Officials at 7434 Perkins Road, Suite B, Baton Rouge, Louisiana 70808. *Page 4 
It is hoped that this opinion has been of some assistance to you.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY CASSANDRA SIMMS
ASSISTANT ATTORNEY GENERAL
CS:rjl
OPINION NUMBER 93-53
February 9, 1993
 71.1 MUNICIPALITIES — Special Legislative Charter R.S. 33:321; R.S. 44:4.1, et seq.: Special Legislative Charter for the City of Plaquemine
Under the terms of the Special Legislative Charter for the City of Plaquemine, the Board of Selectmen has the authority to appoint officers and city employees. The Mayor has no vote in any transaction before the Board, Mr. Phillip Canova, Jr. except in the case of a tie vote, City Attorney but does have the power to veto any Canova Delahaye resolution adopted by the Board of 58156 Court Street Selectmen. The Personnel Board as a Plaquemine, LA 70764-2708 public body, is subject to the provisions of the Public Records Act.
Dear Mr. Canova:
This office is in receipt of your opinion request, which has been assigned to me for research and reply. We restate the facts related in your correspondence.
The City of Plaquemine was incorporated by special act of the Louisiana Legislature as Act 109 of 1878. Amendments to the charter have been duly adopted subsequent to its passage. The mayor and Selectmen are subject to the provisions of this special legislative charter, and responses to your questions are governed by the terms of that charter.
Your inquiry concerns whether the Mayor or the Selectmen possess authority to appoint or terminate certain city officers and employees. We find four pertinent sections of the special charter, which state:
 SECTION 6 The Mayor and Selectmen of said Town shall hold their officers for four years, as herein provided, or until their successors are duly qualified, and shall take and subscribe an oath to faithfully and impartially perform the duties incumbent on them, which said oaths, shall be kept in a bound book in the archives of said board. The Mayor [shall] approve all the laws, ordinances, resolutions, rules or regulations passed by the board, but shall not be entitled to vote upon any question before the Board, except in case of a tie, when he shall give the casting vote. He shall be committing magistrate, with full power to examine and commit in all cases arising under the ordinances of said Town, within its limits, in *Page 2 
the same manner and to the same extent as Justices of the Peace now or may hereafter do, and is hereby fully authorized and empowered to examine, try and sentence any and all persons for any and all violations of the laws, ordinances, rules and regulations of said Town of Plaquemine. . . .
 SECTION 7 Be it further enacted, etc., that the Mayor and Selectmen elect, shall within ten days after being commissioned, assemble, qualify and proceed to the election of suitable persons for the positions of Town Marshal, Collector, Clerk and Treasurer, and whenever necessary, an Assistant Town Marshal. The offices of Marshall and Collector and Clerk and Treasurer may be combined in one. The officers elected as hereinabove provided shall hold their offices one year, and shall take and subscribe and oath for the faithful performance of their duty, and give security in such sum as may be required by the Board, and be at all times subject to the directions of the Mayor and regulations of the Board of Selectmen established for the Government of the same in the performance of their respective duties assigned to them.
 SECTION 13 Be it further enacted, etc., that the Mayor and Board of Selectmen of said Town of Plaquemine, shall have full and ample power and authority to make and pass all such laws, ordinances, and regulations as may be necessary and proper.
 * * *
 Seventh To fix the amount of the bond to be given by the town officers from whom bonds are or may be required; to fix the salaries or compensation of all officers elected or of persons employed by them: to define the duties and to fix the term of office of such officers as they may elect, and to remove for cause any one of the officers or person appointed by the said Mayor and Board. . . .
 SECTION 18 Be it further enacted, etc., that the Mayor [and] three Selectmen shall form a quorum to transact business (or four Selectmen *Page 3 
in the absence of the Mayor); but to levy a tax, toll or impost, or to fix the amount of or to pass any appropriation shall be by a vote of a majority of the Selectmen, with the approval of the Mayor, and such vote shall be duly recorded. The Mayor shall have the right of vetoing any law, ordinance or resolution of the Board, but when he exercises such right he shall return the law or ordinance vetoed to the board within three days after its passage, with his reasons, in writing for such veto. . . when, if four members of the Board vote to give the same effect, it shall become a law notwithstanding such veto.
(Emphasis added).
It appears from a reading of these sections that the Board of Selectmen has the authority to appoint or hire all city officers and employees. We note the Mayor is not allowed to vote in any question before the Board, except in the case of a tie. Charter, Section 6.
There is no language within the provisions of the charter that distinguishes the selection process between officers (such as city clerk, city attorney, fire chief, superintendent of utilities, financial manager and assistant financial manager) and city employees. Although you opine that the Mayor alone may hire and fire city employees, we find no specific authority in support of this conclusion. The Mayor is not granted this authority in Section 6 of the charter, defining certain duties and powers delegated the office of Mayor. In fact, the entire verbage of the charter reflects an intent to vest this authority within the Board of Selectmen, as quoted in the emphasized sections above.
No doubt the Mayor has authority to veto a resolution appointing an officer or hiring an employee, but the actual power to hire and fire officers and city employees appears to be vested within the Board. Further, as you already note in your correspondence, the Lawrason Act statutes are not persuasive in our consideration of the powers delegated a municipal mayor. The Lawrason Act statutes do not apply to municipalities operating under a special legislative charter and the Act's provisions do not apply where the special charter is silent on a particular matter. LSA-R.S. 33:321; Attorney General Opinion Number 92-703, attached.
You object to the establishment of the Personnel Board for the City of Plaquemine, consisting of the Mayor and Board of Selectmen. This board was established in the 1960's. The ordinance establishing the board states, in part: *Page 4 
 "The personnel board shall hire all employees of the city in all departments or commissions which come under the jurisdiction of the city. . . ."
The ordinance establishing the board is not objectionable on the ground that it curtails the Mayor's veto power. Rather, the ordinance is not in conflict with the charter, but in fact reiterates language already adopted within the charter concerning the hiring and firing of city employees.
We also note the Mayor in office at the time of the passage of this ordinance had the power then to veto this ordinance, which the Mayor presumably did not elect to do, or such veto was overridden by vote of the Selectmen. This ordinance has been final and evidently unchallenged for a long period of time.
We do agree, however, that the Personnel Board is subject to the provisions of the Public Records Act, LSA-R.S. 44:4.1,et. seq. Actions taken by the Personnel Board must be in conformity with the provisions of those statutes. Any such language within the ordinance limiting the application of these statutes to this particular board abrogates state law, and is therefore null and void.
In order to clarify any ambiguity in the powers delegated the Mayor and Board of Selectmen, we suggest an amendment to the charter is appropriate. Should you have further inquiries in which we may be of assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: Kerry L. Kilpatrick
Assistant Attorney General
RPI/KLK/0192E
OPINION NUMBER 96-238
August 2, 1996
 71-1 MUNICIPALITIES — Special Charters
Honorable C.J. Cazes The sole authority regarding the Chief of Police hiring and fixing of salaries of P.O. Box 329 employees of the City of Plaquemine Plaquemine, LA 70765-0329 is vested in the Board of Selectmen by special legislative charter.
Dear Chief Gazes:
This office is in receipt of your opinion request concerning the employment and compensation of an executive secretary serving the Chief of Police of the city of Plaquemine. Specifically you ask us to consider the following:
 (1) Does the Chief of Police of Plaquemine, a city governed by a Special Legislative Charter, have the authority to appoint an executive secretary?
This specific inquiry is answered by Attorney General Opinion 93-53. In the opinion, this office concluded that the Board of Selectmen of the City of Plaquemine have the authority to appoint officers and city employees. We based this conclusion on the incorporation charter for the City of Plaquemine, which is found in Act 109 of 1878. The incorporation charter has not been amended by legislative act since Attorney General Opinion 93-53 was released. Absent an ordinance that has been adopted to the contrary, the Board of Selectmen would continue to have sole authority to appoint an executive secretary.
Your second, third, and fourth questions, quoted below are interrelated and responded to summarily by reference to the Charter. You ask:
 (2) If the position and salary of the executive secretary for the Chief of Police has been established by ordinance by the Board of Selectmen, should the secretary receive this salary?
 (3) Can the Board of Selectmen fix the salary of the executive secretary at an hourly rate? *Page 2 
 (4) Can a part time employee be paid the same hourly rate as a full time employee if the part time employee is performing the same duties as the full time employee?
The authority to fix the salary of an employee or an officer of the city of Plaquemine is vested with the Board of Selectmen. The pertinent section of the Special Legislative Charter, Section 13, states:
 "Seventh. To fix the amount of the bond to be given the town officers from whom bonds are or may be required: to fix the salaries or compensation or all officers elected or of persons employed by them;" (Emphasis added)
As previously stated, the Board of Selectmen are given the power to employ and fix the salary of city employees. They could therefore change by ordinance the salary of the executive secretary, as they are given the authority to fix the compensation of the employees of the Chief of Police. The Board of Selectmen could likewise fix the compensation for part time and full time employees at an amount they so choose, as they are given authority to fix salaries of city employees by the Charter.
The sole authority regarding the hiring and fixing of salaries of employees of the City of Plaquemine is vested in the Board of Selectmen by the Charter. We enclose for your further reference and information Attorney General Opinion 93-53.
We hope the foregoing sufficiently answers your questions. If this office may be of any further assistance to you, please contact us.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: KERRY L. KILPATRICK
ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 96-475
December 2, 1996
 77 Officers 71 Municipalites R.S. 33:404
James Collins, Chief of Police A chief of police cannot use a Town of Cotton Valley police vehicle assigned for him P.O. Box 425 for personal use without Cotton Valley, LA 71018 authorization of the mayor and board of alderman.
Dear Chief Collins:
This office is in receipt of your request for an opinion of the Attorney General in regard to your use of a police vehicle as the elected Chief of Police. You indicate problems are arising with the City council concerning police vehicles used on patrol for the Town. As Chief of Police with control of the police vehicles, you ask if this would permit the following:
 1) Passengers in your police car, such as your wife on occasions, and other citizens in general; and
 2) Could the Town be held responsible in case of an accident when the car is fully insured and you are the sole driver.
There is a long line of opinions by this office that recognizes that the chief of police has inherent authority to control city police vehicles and may assign a vehicle to himself for around the clock use concurrent with his twenty-four hour duty, but it has further found the vehicle may not be used as a personal car unless the personal use has been authorized by the mayor and board of aldermen. Because of their power to control and manage municipal property, they may request that the village car be used only when conducting business relative to the police department. Atty. Gen. Op. Nos, 96-292, 95-275, 82-1165, 80-1280.
However, this office has concluded while use of public property for purely private purpose is not permitted, if use of the vehicle is for a public purpose there is no prohibition against a family member traveling with the official in the public vehicle. The determination that the travel is for a public purpose is subject to review and any doubts must resolved to protect the taxpayers against unauthorized use. Atty. Gen. Op. No. 89-369. *Page 2 
In regard to your second question about the possibility of the Town being responsible in case of an accident, we cannot answer this definitively since liability depends on the circumstances. However, in regard to your statement that the vehicle is "fully insured", we feel it should be noted that there could be situations where severe damages could exceed policy limits.
Also, we feel you should recognize that there could be situations where the Town could be held responsible for torts of its officers. In Lamkin v. Brooks, 498 So.2d 1068 (La. 1987) the Louisiana Supreme Court observed that the question presented is whether the officer was acting within the course and scope of his employment at the time of his wrongful act in order to determine if the town can be held vicariously liable under the theory of respondeat superior. However, as observed by this office in Atty. Gen. Op. No. 94-217, the question of municipal liability is fact-sensitive and, as such, cannot be answered specifically.
We hope this is a sufficient response to your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: BARBARA B. RUTLEDGE
Assistant Attorney General
BBR